We'll move now to Case No. 5, which is 22-1106, Hahn v. Kijakazi. And we're going to hear from Mr. Forbes. Mr. Forbes, you may take the podium. Mr. Forbes, you may take the podium. Mr. Forbes, you may take the podium. Regulation 20 CFR 404.953 says that the ALJ has to have a written decision and make its findings by the preponderance of the evidence. So the substantial evidence analysis that we have is that whether that finding of preponderance, the ultimate finding of disability, or the key findings in the Step 5 format, each one, were they found to be made by a preponderance of the evidence? And when I run my optical case recognition on this record, the word preponderance doesn't come up and neither does preponderate. The ALJ makes no finding that the evidence on the particular sub-issues in the ultimate finding preponderates. Now, I didn't raise it. I only discovered that doing other things in the last couple weeks. But it seems to me it's so fundamental to the decision and the analysis of substantial evidence that you might want to consider at in a case soon because it's a common, common omission. So that gets to this. That's the preliminary matter on the standard of review. These cases involving overemphasis of daily activities tend to center upon whether the activities are considered as a part of making an analysis of capabilities or whether they're overemphasized in order to support a non-work-preclusive residual functional capacity. And really the best that the claimant can do is show you the impairments and the daily activities and how they were treated and say, in this case, it looks like they were overemphasized. And how do we know that? Well, we have to look at the case law where they were found to be overemphasized. That's why I arranged my reply brief the way I did, basically showing that this case falls within that universe. Mr. Forbes, can I get the benefit of your reaction on daily activities? Sure. One possible way to read the ALJ opinion is to look at the description on page 5 of 15 of the opinion where the ALJ describes the claimant's testimony, her own account of her limitations in her daily activities. It's right there on the page. And then what happens a page later, at the bottom of page 6, is the ALJ returns to those observations and says, well, I'm not as sure that she's as limited as her testimony may have suggested. And it's in that context, to my eye, that the ALJ is saying, well, you know, because she's able to do some other things. She's able to walk her kids to the bus stop. She's able to do some cooking, etc., etc. Right. Why is that not a proper or fair reading of the opinion? Because the ALJ is centering on the sporadic activities that the case law says can't be used to justify that the claimant is able to do full-time activity. But then the ALJ – it's she, right? She only did that for a few lines. And then she was very quick to say, but I know that the ability to perform daily activities is not necessarily consistent with the ability to perform full-time work. I mean she comes right out and makes the point you just made. Right, but that's – just because the judge says that doesn't mean that the facts are what they are. So you're saying notwithstanding that observation, she over-weighted her daily activities. Because, quite frankly, since Bjornsson – the Bjornsson case and the Beardsley cases, which are regarded as the kind of the lead cases in this particular area, almost – not all and not even almost all, but many administrative law judges will say that precise thing in their decisions to try to insulate themselves from attack on the over-emphasis. And to me, when they bring it up like that, they're just admitting that perhaps they might have done it and they want to use that phraseology in order to deflect that they did do it. I reserved about three minutes, so I think I'll stop for now. Very good. Thank you, Mr. Forbes. We're now going to move to Mr. Mansfield. Mr. Mansfield is appearing remotely. Mr. Mansfield, let me recognize you. Yes, thank you, Your Honor. May it please the Court, David Mansfield for the Acting Commissioner of Social Security. Before I address the merits of the issues that were briefed, I do want to briefly address the issue that my colleague raised for the first time before the Court here today regarding the preponderance of the evidence standard. As Mr. Forbes himself admitted, he has not raised that argument at any point in these proceedings. To use his own point, if he were to run his optical character recognition software on his own briefs in district and this Court, he would not find the word preponderance or preponderate anywhere in those briefs. If this Court, however, were to deem that the issue, despite being clearly waived, were merited being addressed sua sponte, the Commissioner submits that that argument is meritless for two reasons. First, the regulation Mr. Forbes cites does require that the ALJ make a decision by the preponderance of the evidence, but doesn't require that the ALJ recite the language preponderance of the evidence repeatedly throughout the decision or even once. Second, Mr. Forbes has not argued or even let alone shown that the ALJ applied a different standard, that the ALJ did anything other than apply the preponderance of the evidence standard contained in the regulation. So accordingly, if this Court were to address the issue, we respectfully submit that it should reject Mr. Forbes' argument that he is raising for the first time here today. But turning to the merits of the arguments that are properly before this Court, the ALJ properly considered several factors, including Han's daily activities, in evaluating Han's subjective complaints. The ALJ recognized, as this Court has cautioned, that activities of daily living do not necessarily equate to the ability to perform full-time work. The ALJ said as much as you pointed out, Judge Scudder. But the ALJ found that, quote, in conjunction with, unquote, other factors, those daily activities and the record as a whole suggested that Ms. Han was not as limited as she alleged and that she could still perform a reduced range of light work. As such, the ALJ reasonably found that she is not disabled. Turning to more detail in the ALJ's analysis, the ALJ acknowledged Han's subjective complaints that her leg would give out after one to two hours of walking or standing, that she couldn't carry a gallon of milk, that she had three or four panic attacks per week prompted by crowds of larger than five. And the ALJ acknowledged that she has impairments that could cause such symptoms, both physical and mental. But the ALJ considered a variety of factors and found that, quote, when taken together, unquote, these factors supported a finding that she could still perform a reduced range of light work in spite of those allegations. Mr. Mansfield, does the record tell us whether Ms. Han ever worked full-time after the shooting injuries that she sustained in June of 2017? I do not believe that the record reflects that she did work full-time. So to the extent that the record isn't limited one way or the other, I don't believe that she worked full-time after the shooting in 2017. Yeah, we know from what the ALJ said in recounting the gainful employment history that there's some part-time work. Mm-hmm. That's correct. The record doesn't speak to full-time or? I believe it does not, Your Honor. I am happy to check that. Did she testify at all as to, well, the reason she wasn't able to work full-time is because she couldn't? Yes, Your Honor, that was her allegation. Because of the lingering physical and mental effects that followed from the shootings? Yes, Your Honor, that was her testimony. And the ALJ acknowledged as much, acknowledged that she was, at the time of the hearing, working part-time, and recognized that part-time work is not full-time work. But said that that factor, when taken in conjunction with other factors, including her daily activities and the medical evidence more generally, supported a finding that she was not as limited as she alleged. She was limited. The ALJ limited her to a restricted range of light work with postural, environmental, mental, and manipulative limitations. The ALJ simply found that she was not as limited as she alleged based on several factors, many of which Han has either not challenged or has not meaningfully challenged, either in district court or before this court. For instance, the ALJ considered the opinion of the consultative examiner, Dr. Provena, who examined Han and noted low average cognition and some problems with concentration, persistence, and recall, but nonetheless opined that, in spite of these impairments, Han would be able to perform work comparable to past jobs she had performed. And the ALJ reasoned that that opinion was consistent with Dr. Provena's examination notes and thus found it somewhat persuasive, but it supported the finding that Ms. Han was not as limited as she alleged. Similarly, the ALJ considered treatment and examination notes. The ALJ acknowledged Han had some abnormal findings, including reduced sensation, reduced range of motion, and a positive straight leg raise test. But the ALJ also considered evidence that was more benign, for instance, a negative lumbar x-ray, lack of evidence of deficits in fine finger manipulation or reflexes, no muscle atrophy, no evidence of a handheld assistive device. And the ALJ again found that this evidence, taken together with other evidence, supported the finding that Ms. Han was not as limited as she alleged. The ALJ then discussed, as Your Honor brought up, Judge Scudder, that she had worked part-time, and the ALJ recognized the limitations of that evidence, but nonetheless found it suggested that she was not as limited as she alleged. And the ALJ considered Han's daily activities. The ALJ recognized limitations in those daily activities. Han, yes, she took medications and went to her appointments, but as the ALJ acknowledged, she needed reminders for that. She did go to the store, but as the ALJ acknowledged, she did so with her children. And the ALJ, as Judge Scudder pointed out, was quite clear that the ALJ was not equating these daily activities with the ability to perform full-time work. The ALJ merely said that these activities, taken with other evidence, suggest that Han was not as limited as she alleged. That her allegations regarding her ability to lift, her ability to function socially, were not consistent with her own reports regarding her ability to get along with others, her interactions with her mother and a friend and her family, her ability to pay and handle bills, etc. And the ALJ, weighing all these factors, found that Han was not as limited as she alleged. Han's challenges to that analysis do not meaningfully confront most of the factors considered by the ALJ and instead attempt to argue that the ALJ equated her activities of daily living with full-time work, analysis which the ALJ expressly disclaimed engaging in. Put simply, when Han isn't challenging most of the reasoning the ALJ actually used and is challenging reasoning the ALJ expressly declined using, her challenges should fail. For those reasons, the Commissioner respectfully requests that this Court affirm the ALJ's decision. And if Your Honors have no further questions, I will be happy to yield the remainder of my time to my colleague. Thank you very much, Mr. Mansfield. Mr. Forbes, we'll recognize you for any brief rebuttal. Thank you, Your Honor. One thing I do know is that as many times as she was shot and the ensuing physical limitations and the very, very serious mental health limitations, her case sticks out as being at least as bad as every case I cited in my reply brief and in comparison to Bjornsson and Beardsley. It sticks out like a sore thumb if you look at it that way. Granted, in some of those cases there was a very narrow issue of law that was the pivotal point, but they did mention overemphasis of activities. The reason that I believe there's been overemphasis is because in the B criteria analysis on interaction I'm doing this from remote memory, so if I get it wrong, I apologize. But in the B criteria analysis on the interaction, the relationship with the mother and the friend were mentioned. And those interactive relationships were not explored in detail by the judge and the inferences that they somehow indicate the ability to do full-time work would not apply. Regardless of whether, you know, if I drink a cup of water and say I didn't drink a cup of water, still I drank a cup of water. And so just because the judge says in this case that they did not equate the activities with full-time work, that doesn't mean they did not do it. So I want to, just in the last minute, kind of focus us on the common sense aspect of this. When someone has PTSD and anxiety and panic attack issues, when they're in the workforce, regardless of whether they have to interact with one boss or a bunch of employees, they are scared that someone is going to hurt them. Even if they're in a job that is isolated and they don't have to be hardly around anybody, like a janitor job or cleaner job on a shift where they don't have to deal with someone else, they are scared because they still are wondering if someone is going to hurt them and then all of a sudden they realize there's nobody around that can help them. And why they are at work trying to do something when they have six children of the ages of these children, they are scared that someone is going to hurt their children when mom is not at home to be there. That's the reality we're dealing with. That's why I brought this case. Thank you, Your Honor. Thank you, Mr. Forbes. Thank you, Mr. Mansfield. The case will be taken under advisement.